## LEOPOLD C. ZALESKI vs. ELIZABETH S. CLARK.

The plaintiff, a sculptor, made a plaster bust of the deceased husband of the defendant, under an agreement that she was not to be bound to take it unless she was satisfied with it. When it was finished she was not satisfied with it and refused to accept it. In a suit for the price agreed it was found that the bust was a fine piece of work, a correct copy of a photograph furnished by the defendant, and that it accurately portrayed the features of its subject; and that the only fault found with it was that it did not have the expression of the deceased when living, which was caused by no imperfection in the work but by the nature of the material.' Held that the plaintiff was not entitled to recover.

As the bust was to be satisfactory to the defendant, it was for her alone to determine whether it was so, and it was not enough that her dissatisfaction was unreasonable.

The order for the bust was procured by a third person who had a general authority to solicit orders for the plaintiff, but none to make such a condition. Held —1. That such a general authority would seem to be sufficient to authorize the agent to agree upon the terms of the contract. 2. But that, if the authority was not sufficient, the result would be that there was no special contract, and as the defendant had not accepted the bust there was no sale and no liability on the part of the defendant.

ASSUMPSIT, to recover the price of a bust made for the defendant; brought to the Court of Common Pleas of New Haven County, and tried to the court on the general issue, before *Robinson, J.* The court made the following finding of facts:

The plaintiff in March, 1875, was a sculptor by profession, and particularly devoted himself to modeling in plaster, from photographs, the busts of deceased persons. A certain Mrs. Johnson formed his acquaintance, saw his work and was much pleased with it, and endeavored to procure him some orders. Mrs. Johnson was herself an artist, and it had been agreed between her and the plaintiff that they would together occupy a certain store in New Haven and pay the rent therefor, and that Mrs. Johnson should get orders for the plaintiff, if she could, and was to receive a commission therefor, and that the plaintiff should assist her in her business in a similar way and for similar remuneration. Among others she went to Mrs. Clark, the defendant, an old friend of hers, a widow,

told her of the plaintiff, and asked her if she would not like a bust of her deceased husband. Mrs. Clark said she would very much. Mrs. Johnson said that she believed the plaintiff would give perfect satisfaction, and that Mrs. Clark would run no risk in ordering it as she need not take it unless she was satisfied with it. These representations of Mrs. Johnson as to Mrs. Clark's not being liable to take the bust unless it satisfied her were made without any authority to make them from the plaintiff.

Mrs. Clark thereupon gave Mrs. Johnson a photograph, which was a good likeness of the deceased, to be used by the plaintiff in preparing the bust, and Mrs. Johnson gave it to the plaintiff. The plaintiff made the bust, and while at work on it was visited by the defendant, who made some suggestions regarding it which were followed by the plaintiff. When the bust was completed the defendant notified the plaintiff that she should not accept it or pay the price for it, which it had been agreed should be $150.

The bust was a fine piece of work, was a correct copy of the photograph, and accurately represented and portrayed the features of the deceased. The only fault found with it was that it did not have the expression of the deceased during his life, and this the court found from the evidence to have resulted not from any imperfection in the workmanship, but from the nature of a bust as a dead white model, and necessarily destitute of the expression of color and life. The defendant was not satisfied with it, but her dissatisfaction was caused by reasons which would have applied to any bust whatever, and not to this as distinguished from any other.

Upon these facts the plaintiff claimed that he was entitled to recover, that the defendant in ordering a bust was supposed to know the character of the object ordered, and was bound to receive and pay for it, unless there was some objection to this particular bust which did not arise out of the inherent character of busts in general. The defendant claimed that the plaintiff was bound to satisfy her at all events, and that unless she was satisfied she was not bound to take the bust, no matter what was the reason of her dissatisfaction.

The court overruled the claim of the defendant and rendered judgment for the plaintiff to recover $150, with interest from May 1st, 1875.

The defendant moved for a new trial for error in the above ruling of the court.

*C. Ives*, in support of the motion.

1. The plaintiff's agent made a contract with the defendant, by which she agreed that if he would make for her a bust of her deceased husband which satisfied her, she would take it and pay for it $150. No other agreement was made, and no contract whatever was made by the defendant with the plaintiff personally. Upon this contract, therefore, the plaintiff must rely to make out his case. The plaintiff did not perform this contract. The bust he made was not satisfactory to the defendant, and for that reason she was not bound to take and pay for it. Tastes, opinions and judgments differ. He who contracts to do work which will satisfy one does not make out a case by showing that the work done would have been satisfactory to ten thousand others. The face pictured upon canvas or modeled in clay attracts or repels us according as the artist succeeds or fails in reproducing the expression of life. If the defendant in this case looked upon the bust as a hideous caricature, it matters not to her who or how many may think it a beautiful work of art. It is not what she agreed to take or pay for. The precise point involved in this case has been twice decided by the Supreme Court of Massachusetts. The case of *McCarren* v. *McNulty*, 7 Gray, 139, was an action brought to recover the price of a book case. The contract was to "make it in a good, strong, and workmanlike manner, to the satisfaction of" one of the defendants. The court held that the plaintiff could not recover without proving that the book case was "satisfactory." It says: "It may be that the plaintiff was injudicious or indiscreet in undertaking to labor and furnish materials for a compensation, the payment of which was made dependent upon a contingency so hazardous or doubtful as the approval or satisfaction of a party particularly in interest. But of that

he was the sole judge. Against the consequences resulting from his own bargain the law can afford him no relief. Having voluntarily assumed the obligations and the risk of the contract, his legal rights are to be ascertained and determined solely according to its provisions." The same principle has been re-affirmed in a very recent case, in language still more emphatic. *Brown* v. *Foster*, 113 Mass., 136.

2. The plaintiff was bound by the contract made by Mrs. Johnson with the defendant.—1st. It does not appear that the plaintiff placed her under any restrictions in regard to the business of her agency. She was to " get orders for the plaintiff if she could, and was to receive a commission therefor." These few words covered her powers as agent.—2d. In making this contract she was acting within the general and apparent scope of her authority, so that had she in fact been forbidden to make such a conditional contract, yet, as she did make it, the plaintiff is bound by it. "A person having a horse to sell, intrusts a servant with power to sell the horse, and directs him not to warrant the horse; and if the servant, nevertheless, upon the sale should warrant him, the master would be bound by the warranty; because the servant would be acting within the general scope of his authority, and the public cannot be supposed to be cognizant of any private conversation between the master and the servant." Story on Agency, §§ 132, 133; 1 Swift's Digest, 328; *Thames Steamboat Co.* v. *Housatonic R. R. Co.*, 24 Conn., 51.—3d. The defendant made no contract with the plaintiff personally. It is found that she made a certain contract with Mrs. Johnson as plaintiff's agent, and if she is liable on it, she is liable upon it as it was made, and the plaintiff cannot hold the defendant for that portion which he approves and reject the rest. He must take all or none. He has elected to take the order, and he must take it as it was given, and be bound by its condition that the defendant, if not satisfied, need not take the bust.

*T. C. Ingersoll*, contra.

1. The defendant's claim at the trial below was, that the

contract was substantially a void contract, on the theory that it called for an impossibility, namely, an ideal satisfaction, for which the plaintiff had only himself to blame.    2 Parsons on Contracts, 673.    Is this the proper view?    Rather than this, should not the contract be so construed that, without doing violence to language, the honest intention of the parties can be reached, and the contract upheld and enforced?

2.    But there was no contract that the bust should be especially satisfactory.    It is expressly found that the plaintiff did not authorize Mrs. Johnson to say to the defendant that "she need not take the bust unless she was satisfied with it." In fact Mrs. Johnson was not only not the plaintiff's agent for this purpose, but she did not assume to the defendant that she was his agent at all, nor that she was in any way connected in business with him, but she went to the defendant merely "as an old friend of hers," and stated "that she *believed* the plaintiff would give perfect satisfaction, &c."    On no conceivable ground therefore was the defendant justified in relying, to the plaintiff's prejudice, upon these extraordinary representations of Mrs. Johnson.    1 Parsons on Contracts, 39, 40, 60, and cases cited.    In this particular transaction the only agency appearing was an agency between these two parties themselves, Mrs. Johnson acting as the defendant's agent in handing the photograph and giving the order to the plaintiff, which act of agency on the part of Mrs. Johnson the defendant subsequently ratified by visiting the plaintiff while at work on the bust, and "making some suggestions regarding it, which were followed by the plaintiff."

3.    But assuming that the plaintiff was bound by all the representations of Mrs. Johnson, the most that can be claimed is, that the contract called for a bust which should be satisfactory as far as the character of the thing ordered and the nature of the material to be worked upon would admit.    That it was satisfactory in this aspect the court expressly finds. The satisfaction to be met was a *reasonable* satisfaction, not a mere whim or caprice.    That the bust when finished lacked the attractions of life and color, was no more a legal ground for dissatisfaction on the part of the defendant, who had

ordered a bust to be made out of plaster, than the absence of heat and upholstery would justify a similar dissatisfaction on the part of one who had ordered from a mason builder the four walls of a house, and on completion found the residence a cheerless one.   Such dissatisfaction, in reference to works of art certainly, is too much of the dreamy and poetic order to be properly the subject of legal recognition.   In this poetic sense, as distinguished from the legal, it may not be improper to recognize it, and to give the defendant our sympathy, as was the case with Pygmalion of mythological renown, who, a sculptor himself, was thus afflicted, and who, mourning over the one imperfection of his masterpiece, is represented by a modern dramatist as groaning out his dissatisfaction in this wise:

> "No, the thing is cold, dull stone,
> Shaped to a certain form, but still dull stone,
> The lifeless, senseless mockery of life,
> The gods make life, the sculptor only death;
> The merest cut throat, when he plies his trade,
> Makes better death than I with all my skill."

In consideration of the fact that the only fault found with the bust was that it failed "of the expression of the deceased *during his life*," and further, that this failure of expression was due solely to "the nature of a bust as a *dead white model*," it is submitted that the dissatisfaction of this defendant and that of the mythological sculptor are identical. Redress or remedy in either case is beyond the reach of human law.

CARPENTER, J.   Courts of law must allow parties to make their own contracts, and can enforce only such as they actually make.   Whether the contract is wise or unwise, reasonable or unreasonable, is ordinarily an immaterial inquiry. The simple inquiry is, what is the contract? and has the plaintiff performed his part of it?   In this case the plaintiff undertook to make a bust which should be satisfactory to the defendant.   The case shows that she was not satisfied with it. The plaintiff has not yet then fulfilled his contract.   It is not enough to say that she ought to be satisfied with it, and that

her dissatisfaction is unreasonable. She, and not the court, is entitled to judge of that. The contract was not to make one that she *ought* to be satisfied with, but to make one that she *would* be satisfied with. Nor is it sufficient to say that the bust was the very best thing of the kind that could possibly be produced. Such an article might not be satisfactory to the defendant, while one of inferior workmanship might be entirely satisfactory. A contract to produce a bust perfect in every respect, and one with which the defendant ought to be satisfied, is one thing; an undertaking to make one with which she will be satisfied is quite another thing. The former can only be determined by experts, or those whose education and habits of life qualify them to judge of such matters. The latter can only be determined by the defendant herself. It may have been unwise in the plaintiff to make such a contract, but having made it, he is bound by it. *McCarren v. McNulty,* 7 Gray, 139; *Brown* v. *Foster,* 113 Mass., 136.

It further appears that the plaintiff did not make this contract personally, but it was made through the agency of a Mrs. Johnson; and the court below has found that her representations as to the defendant's "not being liable to take the bust unless it satisfied her, were made without any authority to make them from the plaintiff."

It appears that she had a general authority to procure orders for the plaintiff. In the absence of any limitation of her power it would seem that she would be authorized to agree upon the terms of the contract; but conceding that she had no power to make such a contract as this is, we do not see how that circumstance will aid the plaintiff's case. There was no other contract; and if this was unauthorized and not binding upon the plaintiff, then there was no special contract. If none, then, inasmuch as the defendant never accepted the bust, there was no sale and she is not liable.

A new trial is advised.

In this opinion the other judges concurred.